IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GEORGE HOEY MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:05-cv-00384-WKW |
| ) | (WO) |
| DANIEL DEAN, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant Daniel Dean's Motion for Summary Judgment (Doc. # 14). For the reasons given below, the Motion for Summary Judgment will be GRANTED.

### **I. FACTS AND PROCEDURAL HISTORY**

This case arises out of a traffic stop of the plaintiff, George Hoey Morris, by Alabama State Trooper, Defendant Daniel Dean ("Trooper Dean"). In support of his motion, Trooper Dean submitted his affidavit, a video tape of the stop, and a transcript of Mr. Morris's deposition testimony. Mr. Morris opposes the motion with only his affidavit and response brief. The Court has considered the evidentiary submissions including a careful viewing of the videotape of the traffic stop, which is uncontroverted by Mr. Morris. Where a fact is in dispute, it is portrayed in the light most favorable to the non-movant. The facts contained in the parties' evidentiary submissions show the following:

On December 30, 2004, at 4:09 p.m., in an area known for drug activity, Trooper Dean stopped Mr. Morris for speeding. Mr. Morris was driving a yellow Ford Mustang convertible with the top down. Trooper Dean believed that Mr. Morris "showered down," i.e., began speeding when he saw the trooper; however, Mr. Morris explained that he was just "showing off" for his niece and

nephew who were playing outside in their yard nearby. (Pl. Dep. 35; Pl. Aff. 1; Def. Aff. & Video.) Trooper Dean asked Mr. Morris for his license and registration; in response, Mr. Morris gave him his registration and a Florida license with an Alabama address.

Trooper Dean returned to his police vehicle at 4:11 p.m. and called in the stop by radio. He reported to the dispatcher that Mr. Morris was driving 61 m.p.h. in a 30 m.p.h. zone. He reported the Florida license number and learned that Mr. Morris also had an Alabama license. At approximately 4:19 p.m., Trooper Dean further learned that Mr. Morris had a prior drug arrest.[1]

At 4:21 p.m. Trooper Dean asked Mr. Morris to come out of his car and to place his hands on the back of the car. Mr. Morris evaded Trooper Dean's question as to why he did not mention his Alabama license. Trooper Dean also asked Mr. Morris whether he had ever been arrested for a drug offense. Mr. Morris stated that he had not. At 4:22 p.m., Trooper Dean asked whether Mr. Morris had been drinking. Mr. Morris denied that he had been drinking and suggested that he be given sobriety tests. After Mr. Morris denied that he had any weapons, Trooper Dean conducted a pat down search of Mr. Morris's person.

At 4:23 p.m., Trooper Dean asked for Mr. Morris's consent to search the car, which Mr. Morris refused. Trooper Dean then stated that he was going to call for a police dog, told Mr. Morris to keep his hands on the car, and began to walk back toward his vehicle. Within seconds, Mr. Morris took his hands off the vehicle and reached into his pocket.[2] Trooper Dean returned, placed Mr. Morris's cell phone on the trunk of the car, and handcuffed Mr. Morris at 4:23:19 p.m. Trooper

---

[1] The video shows that during the stop, other police vehicles are driving past the trooper's car and stopping behind it. Trooper Dean has a conversation with an officer who is coincidentally nearby for reasons unrelated to the traffic stop of Mr. Morris.

[2] At this time, the video shows that there is some increased activity involving other police vehicles behind Trooper Dean's car, apparently unrelated to Mr. Morris's traffic stop.

Dean then went to his car and radioed for a dog. At 4:24:50 p.m., Trooper Dean returned to Mr. Morris and placed Mr. Morris's cell phone in Mr. Morris's pocket. He began to write the traffic ticket as he explained the ticket to Mr. Morris. Trooper Dean also explained that he handcuffed Mr. Morris for the trooper's safety, especially considering the disturbance that was going on behind the trooper's car. Because Mr. Morris's pupils appeared small and his eyes were watery, Trooper Dean asked Mr. Morris whether he was taking any medication. Mr. Morris denied taking medication.

At 4:28 p.m., Trooper Dean and Mr. Morris walked to the trooper's car as they discussed the impending dog sniff. Trooper Dean explained that the unrelated incident involving other police vehicles was over and thus removed the handcuffs from Mr. Morris. At 4:30 p.m. Trooper Dean and Mr. Morris entered the trooper's car. They engaged in a conversation regarding the constitutionality of the stop and the dog sniff while Trooper Dean completed the speeding ticket. Trooper Dean issued the ticket at 4:36 p.m., and their conversation continued.[3]

At 4:40 p.m. they exited the trooper's car when local police officers and the dog arrived. Trooper Dean had a conversation with a local officer about the stop. The dog sniff began at approximately 4:43 p.m. The dog alerted on the passenger door at 4:44 p.m. The local officer opened the door, the dog hopped in, and alerted on a substance on the gear shift a few seconds later. In the next four minutes, Trooper Dean, with the assistance of the local officers, field tested the substance using a "narco pouch." (Def. Video.) At approximately 4:50 p.m., the substance tested negative for narcotics. Trooper Dean, Mr. Morris, and the local officer engaged in another conversation regarding the constitutionality of the dog sniff when Mr. Morris asked if he could leave

---

[3] Mr. Morris later pleaded guilty to the speeding violation.

at 4:52 p.m. Trooper Dean immediately answered in the affirmative, and Mr. Morris got into his car and drove away.

Mr. Morris alleges that the entire stop lasted approximately one and one-half hours, forty-five minutes of which were spent waiting for the dog to arrive. (Compl. ¶ 24; Pl. Aff. 38.) The video reflects that the entire stop lasted from 4:09 p.m. to 4:52 p.m., which is approximately forty-three minutes, and that the wait for the dog to arrive after the ticket was completed was approximately four minutes. (Def. Aff. & Video).

Mr. Morris filed this action against Trooper Dean, in his individual capacity, on April 26, 2005. There are four counts in the complaint, each alleging a claim under 42 U.S.C. § 1983 for a violation of the right to protection from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments. The factual bases for the claims are, respectively, the pat down or search of Mr. Morris's person, the search of Mr. Morris's vehicle, the handcuffing or arrest of Mr. Morris, and the allegedly unreasonably long detention of Mr. Morris. Mr. Morris seeks compensatory and punitive damages, attorney's fees and expense, and other relief to which he may be entitled.

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV.  DISCUSSION

Trooper Dean argues that the pat down and handcuffing of Mr. Morris, as well as the dog sniff and the detention of Mr. Morris during the dog sniff, are not constitutional violations as a matter of law.  Moreover, Trooper Dean claims entitlement to qualified immunity.  Although Mr. Morris admits that Trooper Dean stopped him for speeding, he argues that there is no justification for either the warrantless search of his vehicle or for his detainment for the extended time necessary to call the police dog.  Mr. Morris further argues that Trooper Dean violated a clearly established constitutional right to be free from warrantless searches and, thus, that he is not entitled to qualified immunity.

This is an unusual case in that the parties dispute neither the material facts of the case nor the applicable law; they differ only in their application of the law to the facts.  Furthermore, the Court notes that, in his response brief, Mr. Morris fails to address all of the arguments made by Trooper Dean.  Specifically, Mr. Morris does not argue for the survival of the claims based on the allegedly illegal pat down (first cause of action) and handcuffing (third cause of action).  After a careful review of the evidentiary submissions, and for the reasons stated by the defendant, the motion for summary judgment is due to be granted without further analysis, and these claims--the first and third causes of action--are due to be dismissed with prejudice as a matter of law.

The Court now will analyze Trooper Dean's qualified immunity defense to the remaining claims for the warrantless search of Mr. Morris's car (second cause of action) and for the allegedly unreasonably long detention of Mr. Morris (fourth cause of action).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be even potentially eligible for qualified immunity, the official has the burden of establishing that he was acting 'within the scope of his discretionary authority.'" *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (quoting *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995)). There is no dispute here that Trooper Dean was acting within the scope of his discretionary authority.

Once it is established that the defendant was acting within his discretionary authority, the burden shifts to the plaintiff to prove that qualified immunity is not warranted. *Vinyard*, 311 F.3d at 1346. The Supreme Court has articulated a two-part test in the qualified immunity analysis. First, the court must determine whether the plaintiff's allegations establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (stating that the court must evaluate the complaint to determine if, assuming the allegations are true, it pleads a cognizable violation of the constitution). If this is answered in the affirmative, the court's next step is to determine whether the right in question was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (stating that "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.")). In essence, a defendant is entitled to "fair warning" that his alleged conduct would be unconstitutional. *Hope*, 536 U.S. at 741.

The Court's first step, then, is to determine whether the facts of this case establish that Trooper Dean, by detaining Mr. Morris until the dog arrived or by searching Mr. Morris's vehicle

without a warrant, violated Mr. Morris's constitutional rights. The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A traffic stop is a limited form of a seizure; thus, its legality is analyzed under the standard articulated in *Terry v. Ohio,* 392 U.S. 1(1968). *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citations omitted). "According to *Terry*, even in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *United States v. Pruitt,* 174 F.3d 1215, 1219 (11th Cir.1999). "A traffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." *Purcell*, 236 F.3d at 1277 (citing *United States v. Holloman,* 113 F.3d 192, 196 (11th Cir.1997). "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Perkins*, 348 F.3d at 970 (citations and quotation marks omitted). An "inchoate and unparticularized suspicion" or a "hunch" is insufficient to establish reasonable suspicion. *Perkins*, 348 F.3d at 970 (citations and quotation marks omitted).

The facts establish that Trooper Dean issued Mr. Morris a traffic ticket at 4:36 p.m., the police dog arrived at 4:40 p.m., and Mr. Morris left the scene at 4:52. The Court assumes without deciding that the sixteen minute detention beyond the issuance of the citation was unnecessary to process the traffic violation; therefore, for purposes of this analysis, the detention was unconstitutional unless Trooper Dean had a reasonable, articulable suspicion for detaining Mr. Morris until the dog arrived. By affidavit, Troop Dean avers that he had a reasonable suspicion that Mr. Morris had been using illegal drugs: Mr. Morris "showered down" or sped up when he saw the

8

trooper; Mr. Morris appeared nervous and was stretching, which Trooper Dean has been taught is an indicator of nervousness; he was driving with the convertible top down on a chilly December day; he gave the trooper a Florida license with an Alabama address; he did not tell the trooper that he also had an Alabama driver's license; he evaded the trooper's question regarding his criminal history and denied any prior arrests even though the NCIC check revealed he had previously been arrested on a drug offense; his pupils were small and his eyes were watery, but he denied being on any medication, which, in the trooper's experience, can be an indicator for drug use; the traffic stop occurred in an area known for drug activity; and he had a strong body odor, which can be indicator of drug use.

The totality of these circumstances, particularly Mr. Morris's failure to mention his Alabama license, his false denial of prior drug arrests, and the appearance of his pupils, show that Trooper Dean had reason to suspect that Mr. Morris may have been violating more than just a traffic law. Trooper Dean gave Mr. Morris an opportunity to allay his concerns, but Mr. Morris's answers to the questions posed did nothing but contribute to the trooper's suspicion. *See United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005). Such suspicion was reasonable, and it justified the detention of the defendant for at least an additional sixteen minutes in order for Trooper Dean to expeditiously confirm or dispel his suspicions. Plaintiff has not cited, and this Court's review of the relevant law has not revealed, any case that has held that the circumstances present here do not amount to a reasonable, articulable suspicion of drug activity. Because the plaintiff fails to carry his burden of showing that the undisputed facts establish that the detention was a constitutional violation, the Court need not reach the second part of the qualified immunity analysis.

Mr. Morris also fails to carry his burden of showing that the undisputed facts establish that the warrantless search of his car was a constitutional violation. He is correct in positing that warrantless searches are per se unreasonable, but he neglects to address one rather well-recognized exception. Where there is probable cause to believe that contraband is located in an automobile, a warrantless search is permissible. *California v. Acevedo*, 500 U.S. 565 (1992); *see also United States v. Gonzalez*, 71 F.3d 819, 825 n.14 (11th Cir. 1996). Trooper Dean had probable cause to search Mr. Morris's car because the police dog alerted to the scent of narcotics near the car's gear shift.[4] The dog alerted to only one small area of the car, and Trooper Dean properly limited the scope of the search to just that area. As the plaintiff has not established any constitutional violation, Trooper Dean is entitled to qualified immunity on the remaining claims.

## V.  CONCLUSION

Accordingly, it is ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 14) is GRANTED, and all claims are DISMISSED with prejudice. Furthermore, the pretrial conference scheduled for August 3, 2006, is CANCELLED.

An appropriate judgment will be entered.

---

[4] Although Mr. Morris does not argue it here, at the time of his traffic stop he made quite a deal about the constitutionality of a dog sniff. To the extent Mr. Morris still has doubts, the Court notes that a dog sniff does not qualify as a "search" for Fourth Amendment purposes. *United States v. Place,* 462 U.S. 696, 707 (1983); *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997). Shortly after Mr. Morris's traffic violation, the Supreme Court, in *Illinois v. Caballes*, 543 U.S. 405 (2005), held that, where a lawful traffic stop was not extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to such a stop, another officer's arrival at the scene while the stop was in progress and the use of a narcotics-detection dog to sniff around the exterior of the motorist's vehicle did not rise to the level of a cognizable infringement on motorist's Fourth Amendment rights, such as would have to be supported by some reasonable, articulable suspicion.

DONE this the 31st day of July, 2006.

                                                /s/   W.  Keith Watkins
                                      UNITED STATES DISTRICT JUDGE